UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BARBARA ANNE LINDSLEY,

                         Plaintiff,

                                                **Hon. Hugh B. Scott**

                           v.                                 **15CV876A**

                                                     **Report**
                                                      **and**
CAROLYN W. COLVIN, Acting             **Recommendation**
Commissioner of Social Security[1],

                        Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 11 (plaintiff), 13 (defendant Commissioner)). This is the second action by this plaintiff to recover disability benefits, see Lindsley v. Colvin, Case No. 13CV771, Docket No. 22 (Report & Recommendation of Aug. 11, 2014) (R. 798)[2].

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

---

[1]On February 14, 2013, Carolyn W. Colvin became acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for the now former Commissioner Michael Astrue as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

[2]References noted as "(R.__)" are to the certified record of the administrative proceedings. In this case, that record was docketed as Docket No. 7 and the initial portions of that record are the same as from Lindsley v. Colvin, Case No. 13CV771.

## PROCEDURAL BACKGROUND

The plaintiff ("Barbara Anne Lindsley" or "plaintiff") filed her first application for disability insurance benefits on April 1, 2003. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated January 15, 2010, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ rendered a second decision on March 28, 2012 (R. 20, 758). That decision became the final decision of the Commissioner on May 28, 2013, when the Appeals Council denied plaintiff's request for review (R. 1, 776).

Meanwhile, plaintiff filed a second application on July 19, 2013, and was initially found to be disabled and eligible for Title II disability benefits effective March 29, 2012 (R. 790), and for Title XVI benefits as of July 19, 2013 (R. 789).

Plaintiff commenced Lindsley v. Commissioner, Case No. 13CV771, and challenged the denial of her first application. This Court reversed and remanded the matter for further administrative proceedings. (R. 798.) The Appeals Council acknowledged that remand and stated that it would look into plaintiff's second application and consider them together in a new decision (R. 851). The Appeals Council then found good cause to reopen the second determination (R. 852-53) because of an inadequate record relied upon by the single decision maker in concluding that plaintiff was disabled at step three of the five-step analysis (R. 852-53). There, the single decision maker M. Rosten (R. 786, 795) relied upon the findings of consultative examiner Kavitha Finnity, Ph.D., that plaintiff had marked difficulties in maintaining social functioning, as well as maintaining concentration, persistence, or pace (R. 936, 935-36). The

Appeals Council, however, concluded that "such opinions suggest no more than moderate limitation in social functioning and concentration, persistence, or pace, and do not provide support for single decision maker Rosten's paragraph B criteria ratings of marked limitations" (R. 853).

The Appeals Council remanded the case to the ALJ on January 28, 2015 (R. 813). There, the ALJ reconsidered the favorable second application Lindsley filed and consolidated that application with consideration of her first application (R. 715, 815), conducting another hearing on July 21, 2015 (R. 725). The ALJ rendered a decision on the consolidated applications on August 19, 2015, declaring that plaintiff was not disabled from April 1, 2003 (R. 670-92).

Plaintiff commenced this action on October 5, 2015 (Lindsley v. Colvin, Case No. 15CV876, Docket No. 1). The parties then moved for judgment on the pleadings (Docket Nos. 11, 13), and these motions were deemed submitted on May 2, 2016 (Docket No. 15).

## FACTUAL BACKGROUND

Plaintiff was born on February 23, 1976, and has a high school education (R. 30). Prior to her onset date of April 1, 2003, plaintiff performed unskilled labor, last working in a motel until after her onset and her condition worsened and accommodations for it were removed (R. 22, 673). Plaintiff claims post-traumatic stress disorder, generalized anxiety disorder, borderline intellectual functioning with low average adaptive functioning, having a history of poly-substance abuse, fibromyalgia, clubfoot of the right leg, migraines, and scoliosis (R. 673).

## MEDICAL AND VOCATIONAL EVIDENCE

*13CV771 Record*

From the record in the initial application and action, Lindsley v. Colvin, Case No. 13CV771 (Docket No. 22, Report & Rec., at 2-4, reprinted R. 799-801), plaintiff claims a

number of subjective complaints and functional limitations attributable to her asserted impairments, namely mental health conditions and carpel tunnel (R. 24, 41, 136). At her first hearing on November 15, 2011, plaintiff testified that she worked part time as a laundry worker and housekeeper from 2003-10, working up to 30 hours a week (R. 25, 42, 43). She stated that she missed a lot of time at work and could not stay in control of her actions (R. 25, 43). In 2010, plaintiff had a mental breakdown and a doctor ordered her not to work (R. 25). Her impairment was an overdose of alcohol and pills (R. 25). She lives with two of her four children and has a case manager for her and her children, with a parent aid coming in daily for an hour (R. 25). She sees a therapist every other week or weekly and takes her medication (R. 25), although there are reports in her medical record of periods when she stopped taking her medication (R. 26, 447). She writes everything down, she gets DVT therapy and goes into her room and fantasizes about being in another world (R. 25).

The ALJ initially found that plaintiff had severe impairments for major depression and cannabis and opioid dependence, and post-traumatic stress disorder ("PTSD"), but found her other claimed impairments to be non-severe (R. 23). As for her claimed mental impairments, the ALJ found that she did not have at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation to meet the regulatory "paragraph B" requirements for a qualifying impairment (R. 23; see R. 853). The ALJ also concluded that, regarding "paragraph C" requirements, the evidence failed to show paragraph C criteria (R. 24).

Regarding her asthma, the ALJ found that it was not severe and that plaintiff had no pulmonary function tests, emergency room or other hospital admissions for any attacks and no notation of asthma in treating notes (R. 23). The ALJ concluded that plaintiff did not have an

impairment or combination of impairments that met or exceeded the severity of one of the impairments listed in the Social Security regulations (R. 23-24).

The ALJ next found that plaintiff had a residual functional capacity to perform all exertional levels of work, with nonexertional limitations to avoid interactions with the public as her duties and she could occasionally understand, remember and carry out complex and detailed task (R. 24).

The ALJ asked the vocational expert whether plaintiff can return to her past relevant work as a hotel housekeeper or laundry laborer, posing a series of hypotheticals (R. 55).  In the first hypothetical, the subject would have non-exertional limitations to avoid interactions with the public, and occasionally understanding and carrying out complex and detailed tasks; the expert opined that this subject could perform plaintiff's past relevant work as a hotel housekeeper or laundry laborer (R. 55) during the first period (from onset to March 28, 2012) as well as during the second period (from March 29, 2012, to present, the subject of the second application) (R. 691). The expert also opined that a similar subject could work (for example) as a hand packager or industrial cleaner, both medium exertion, unskilled occupations (R. 55-56).  Plaintiff's counsel asked the expert refinements to the hypothetical about the hypothetical subject having the inability to stay on task, with the expert opining that such a subject could get jobs in her past relevant work but might not keep them (R. 56-58, 56-57).  Plaintiff's counsel also asked, if that subject was absent one or more days per week, would it affect that subject retaining such jobs.  The expert answered that absenteeism would impact on job retention (R. 57-58).  The ALJ concluded that plaintiff could resume her past relevant work in housekeeping and laundry laborer (R. 30).

This Court recommended remand of this matter due to plaintiff's intelligence testing, Lindsley, supra, Case No. 13CV771, Docket No. 22, Report & Rec. at 7-8 (reprinted R. 804-05).

*Second Application*

Plaintiff filed a second application on July 19, 2013, and was initially found to be disabled and eligible for Title II disability benefits effective March 29, 2012 (R. 790), and for Title XVI benefits as of July 19, 2013 (R. 789). The single decision maker, M. Rosten, relied upon the evaluation of Dr. Finnity (R. 934) in finding that plaintiff had marked limitations for maintaining social functioning and maintaining concentration, persistence, or pace (R. 786, 795). Dr. Finnity found

> "there is no evidence of limitation in the claimant's ability to follow and understand simple directions, perform simple tasks, or maintain attention and concentration. She is moderately limited in her ability to maintain a regular schedule due to psychiatric symptoms. There is no evidence of limitation in the claimant's ability to learn new tasks, perform complex tasks, or make appropriate decisions. She is moderately limited in her ability to relate with others and deal with stress.
>
> "The results of the evaluation appears to be consistent with psychiatric symptoms which interfere with the claimant's ability to function on a daily basis."

(R. 936). Dr. Finnity noted that plaintiff's attention and concentration were intact (R. 935), while also noting that she did not socialize with friends but had a good relationship with her family (R. 936).

In remanding the first application, the Appeals Council found good cause to reopen this second determination because it found that the record did not support the finding of the single decision maker that plaintiff met the requirements for Listing 12.06 (R. 852-53). Specifically, the Appeals Council found that Dr. Finnity's opinion did not suggest more than moderate limitations in social functioning or concentration, persistence, or pace and thus does not support the single

6

decision maker's "paragraph B" criteria rating (R. 853).   The Appeals Council also observed that no other evidence supported this finding (R. 853).

*Current Case, No. 15CV876*

Upon the consolidation of the first and second applications (R. 851, 813, 671), the ALJ reviewed the "paragraph B" criteria for mental impairments, finding that plaintiff had mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties also in concentration, persistence and pace; and no episodes of decompensation (R. 676; see R. 853).   The ALJ concluded that plaintiff did not have at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, thus not satisfying the "paragraph B" criteria (R. 676).

The ALJ then considered plaintiff's IQ scores, the subject of remand of the first case (R. 677-78, 688, 689, 804-05; Lindsley, 13CV771, Docket No. 22, Report & Rec., at 7-8).   The ALJ also noted that an April 2015 testing showed that plaintiff had borderline intellectual functioning to low average range, with a full scale IQ of 75 (R. 678, 1268-69), stating that plaintiff also had never been diagnosed with mental retardation or a learning disability (R. 678).

The ALJ found that plaintiff had a residual functional capacity to perform a full range of work at all exertional levels, but with certain non-exertional limitations (R. 678).   The limitations found were that plaintiff could occasionally interact with the public; frequently interact the coworkers and supervisors; and could occasionally understand, remember, and carry out complex and detailed tasks (R. 678).   The ALJ specifically found that, from March 29, 2012, to August 19, 2015, the decision date, plaintiff had the residual functional capacity to perform the full range of light exertional activity, but again she could occasionally interact with the public, frequently

7

interact with coworkers and supervisors, and could occasionally understand, remember, and carry out complex and detailed tasks (R. 678).

The ALJ then posed a hypothetical to a vocational expert in circumstances similar to those the ALJ found for the plaintiff and the expert opined that the hypothetical claimant could perform plaintiff's past work as a cleaner-housekeeper or laundry worker (R. 691).

As a result, the ALJ again found that plaintiff was not disabled (R. 692).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.  See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in

8

any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past.   20 C.F.R. §§ 404.1520(e) & 416.920(e).   When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."   See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).   The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity.   Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff now claims that the Appeals Council erroneously opened her favorable determination on her second application, thus requiring reversal for determination of the calculation of benefits (Docket No. 11, Pl. Memo. at 30-37).   Also, she argues that this case should be remanded to have the ALJ properly consider the opinion of Nurse Practitioner Catherine Kleckner (R. 1205-10; Docket No. 11, Pl. Memo. at 37-40), who concluded that plaintiff was not able to maintain employment because plaintiff was "overwhelmed with her own mental health issues along with managing her children's medical and mental health issues.   She would not be able to maintain a work schedule and maintain her health and mental health appointments appropriately" (R. 1209).   Plaintiff also faults factual errors the ALJ made regarding plaintiff's mental health (Docket No. 11, Pl. Memo. at 40).

Plaintiff also calls for remand of this proceeding because the ALJ failed to weigh the opinion of Physician Assistant Elaine Lemley, who found that the plaintiff could not work due to her depression, bipolar, migraines, and fibromyalgia (Docket No. 11, Pl. Memo. at 40-41).

Defendant counters that substantial evidence supports the ALJ's latest decision (Docket No. 13, Def. Memo. at 17-29). Defendant argues that the Appeals Council did not err in reopening plaintiff's favorable decision on her second application because there was "good cause" that the evidence clearly shows that there was an error by the single decision maker (id. at 26-29), see 20 C.F.R. §§ 404.988, 416.1488, 404.989, 416.1489. She contends that the ALJ properly evaluated Kleckner's statement that plaintiff could not maintain employment because she would not be able to maintain a regular work schedule and maintain her health and mental health appointments (id. at 17-23). Even though the ALJ did not cite PA Elaine Lemley's statement that plaintiff was very limited in functioning at a consistent pace (R. 1272; but cf. Docket No. 11, Pl. Memo. at 40-41), this matter need not be remanded (Docket No. 13, Def. Memo. at 23-26).

In her brief reply, plaintiff contends that defendant applied the wrong standard, that the Appeals Council needed to show that evidence "clearly shows on its face that an error was made" (Docket No. 17, Pl. Reply at 1, emphasis in original omitted), 20 C.F.R. §§ 416.1489, 404.989. This is the sole issue plaintiff raised in reply.

I.   Reopening Favorable Second Application

The Appeals Council has good cause to reopen a determination if new and material evidence is furnished, a clerical error in computation of benefits or "the evidence that was considered in making the determination or decision clearly shows on its face that an error was made," 20 C.F.R. § 404.989(a) (1)-(3); see 20 C.F.R. § 416.1489(a) (emphasis added) (R. 852).

Plaintiff argues that there was not clearly shown error as to her meeting the "paragraph B" criteria, as found by the single decision maker in concluding that she was disabled (Docket No. 17, Pl. Reply at 1-2; see Docket No. 11, Pl. Memo. at 30-37). She also contends that other evidence in the record (R. 1158-1259, 1353-1508) supports the "paragraph B" criteria findings of the single decision maker (Docket No. 11, Pl. Memo. at 34), as well as ADL forms referenced by the state agency but not in the administrative transcript (see id. at 35).

Defendant counters that the Appeals Council had good cause to reopen the determination of the second application with the error being the lack of evidence (as indicated by the Appeals Council) for that determination (Docket No. 13, Def. Memo. at 26, 26-28). Dr. Finnity, who the single decision maker cited, observed that plaintiff's attention and concentration were intact (R. 722; Docket No. 13, Def. Memo. at 27). Defendant also contends that subsequent evaluations of plaintiff in this record, from Dr. Ransom in 2015 and Physician Assistant Lemley reporting plaintiff's mental status examination was grossly normal (R. 1262, 1009), "do not support a finding that plaintiff had marked limitation in social interaction or in concentration, persistence, or pace" (id. at 28-29, 12, 13), the issues the Appeals Council found were determined in error.

Replying, plaintiff points out that the Appeals Council had the burden of showing that the evidence "clearly shows on its face that an error was made," 20 C.F.R. §§ 416.1489, 404.989, in the October 15, 2013, decision without showing what that clear error was (Docket No. 17, Pl. Reply Memo. at 1). She contends that the Commissioner had the burden of showing that clear error and the Commissioner could not merely rely upon the substantial evidence standard for determining disability (id.).

The question, then, is whether there was shown clear error in the single decision maker's decision. That showing was made. The single decision maker here relied upon the examination of Dr. Finnity, who found that plaintiff had "moderate" limitation in her ability to relate to others and that, while she did not socialize with friends, she had a good relationship within her family (R. 936), to conclude that plaintiff had a "marked" limitation in her social functioning (R. 786, 795). That single decision maker also relied upon Dr. Finnity's finding as to plaintiff's maintenance of concentration, persistence or pace that she was "moderately limited in her ability to maintain a regular schedule due to her psychiatric symptoms" (R. 936), but that her attention and concentration were intact (R. 935), to conclude that she also had a "marked" limitation in this area (R. 786, 795). There is no record to support the graver degree of limitation of "marked" for either characteristic, see 20 C.F.R. pt. 404, subpt. P, Appx. 1, Listing 12.00(C) (assessment of severity, defining "marked" as "more than moderate but less than extreme"). Plaintiff points to progress notes from Genesee County Mental Health Services (R. 1158-1259; Docket No. 11, Pl. Memo. at 34) and Batavia Family Care Center (R. 1353-1508; Docket No. 11, Pl. Memo. at 34) without citing to specific instances in those records that showed plaintiff was noted to have had moderate limitations in either social functioning or concentration, persistence or pace that the single decision maker could have relied upon as well as Dr. Finnity's ambiguous findings. As plaintiff notes (Docket No. 11, Pl. Memo. at 36), Dr. Finnity's findings can be read different ways; but there was no clear statement from Dr. Finnity to support a conclusion that plaintiff had "**marked**" limitations in these areas.

Thus, plaintiff's objection to reopening the second decision should be **rejected**.

II.     Treating Sources

Plaintiff next points to two practitioners' opinions that she believes the ALJ should have considered. While not an "acceptable medical source" under Social Security regulations, a nurse practitioner or a physician assistant can be considered as an "other source" for opinions on a claimant's condition, 20 C.F.R. § 416.913(d)(1). The opinion from such other sources is entitled to some deference as a treating physician's opinion (Docket No. 11, Pl. Memo. at 38-39), with the weight to be given to such opinions being at the discretion of the ALJ, Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir. 1995) (id. at 39).

A.      Nurse Practitioner Kleckner's Opinion

The ALJ this time gave Kleckner's opinion little weight because her findings—that plaintiff could not keep her employment due to her need for mental health appointments—was not a disabling condition (R. 689-90; Docket No. 11, Pl. Memo. at 38). She contends that the ALJ's assessment here "essentially amounts to abuse of discretion" (Docket No. 11, Pl. Memo. at 39). If plaintiff's treatment schedule and appointments preclude her from maintaining a full 8 hour day, 5 days a week work schedule, then plaintiff concludes that she could not perform work at any exertion level (id.), see SSR 96-8p.

Defendant argues that Kleckner's opinion goes to an issue—the inability to work—that is reserved to the Commissioner as the final determination of disability (Docket No. 13, Def. Memo. at 17). Defendant also argues that Kleckner's opinion is not based on a medically determinable impairment but from plaintiff's ability to attend appointments and maintain a work schedule (id. at 18), arguably the result of an impairment. Also since a nurse practitioner is not a recognized medical source, defendant concludes that the ALJ could consider that opinion under SSR 06-3p,

the standard for non-medical source opinions, subject to factors such as how consistent that opinion is with the rest of the medical record (id. at 18-19).   Defendant indicates that the ALJ properly relied upon a medical source opinion from Dr. Christine Ransom, Ph.D., who found that plaintiff had no functional limitations except for mild difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress (id. at 19; R. 1261-62, 690). Defendant also points to plaintiff's medical records from Genesee County Mental Health Services (R. 344, 447, 1159, 1258, 690) that noted plaintiff's mental health was "nearly normal findings" (Docket No. 13, Def. Memo. at 21).

> Plaintiff's Nurse Practitioner Kleckner evaluated plaintiff and concluded that plaintiff
>
> "is not able to maintain employment at this time.   She is overwhelmed with her own mental health issues along with managing her children's medical and mental health issues.   She would not be able to maintain a work schedule and maintain her health and mental health appointments appropriately.   It is recommended that she receive Social Services support at this time."

(R. 1209).   Previous to that opinion, the Nurse Practitioner also noted that plaintiff avoided follow up appointments for herself for her medical and mental conditions, while focusing on her children (R. 1209), that plaintiff "has the ability to lie effectively so that she does not have to be admitted to hospitals or get extensive treatment" (R. 1209), and that plaintiff had "a pattern of minimizing her symptoms" to avoid psychological treatment and possibly losing her children (R. 1209).

The record here does not state that plaintiff would be required to have numerous medical appointments that would take her away from work.   In fact, plaintiff would lie and do other things to avoid attending her medical and psychiatric appointments.   As indicated, plaintiff has minimized her condition to avoid medical appointments.   The need for her to keep appointments is not a medically determinable impairment, especially if those appointments may not be kept.

B.      Physician Assistant Lemley

Plaintiff concludes that the ALJ failed "to mention, much less weigh," Physician Assistant Elaine Lemley's opinion as to plaintiff's opinion that plaintiff could not return to work, asserting that this failure was abuse of discretion (Docket No. 11, Pl. Memo. at 41; R. 1272).   Physician Assistant Lemley found in September 17, 2013, that plaintiff was unable to return to work due to depression, bipolar, migraines, and fibromyalgia (R. 1272, 1273, 1274).   Instead, it appears that the ALJ relied upon a consultative psychological examination conducted on September 23, 2013 (R. 686, 934), which the Appeals Council rejected in another context (R. 853).

Defendant counters that, while not mentioned by the ALJ in the decision, there is no basis to find that Lemley's opinion was not considered, especially where as here the ALJ stated that he considered the entire record (R. 673 ("After careful consideration of the entire record, the undersigned makes the following findings . . . ."); Docket No. 13, Def. Memo. at 23). Considering Lemley's findings, defendant argues that they in fact support the ALJ's residual functional capacity finding (Docket No. 13, Def. Memo. at 24-25).

Lemley, however, found one limitation that was "very limited" that she appeared able to function in a work setting at a consistent pace and only "moderately limited" for walking, standing, lifting, carrying, pushing, pulling, bending, climbing stairs (R. 1274).   Defendant explains this finding as being an outlier from the rest of Lemley's evaluation and that of the record as a whole (Docket No. 13, Def. Memo. at 25).

Lemley did state that most of plaintiff's functional limitations were either lacked evidence of limitations or were moderately limited but then concludes that plaintiff "was unable to do work of any kind due to mood disorder & back pain, muscle aches" (R. 1274).   This inconsistency is

16

unexplained. The ALJ did not abuse his discretion in consideration of Lemley's findings, to the point of not expressly citing them in the decision.

* * * *

In sum, the ALJ appropriately considered nurse practitioner and physician assistant's findings in concluding that plaintiff is not disabled. Plaintiff's motion for judgment in her favor on this ground should be **denied**.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **AFFIRMED**. Defendant's motion for judgment on the pleadings (Docket No. 13) should be **GRANTED** and plaintiff's motion for similar relief in her favor (Docket No. 11) should be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>** Thomas

v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
October 24, 2016